UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARL and ALICIA FURMAN,<br><br>              Plaintiffs,<br><br>v.<br><br><br>JOHN RUGER and<br>RUGER ASSOCIATES, INC.,<br><br>              Defendants. | Docket No. 05-CV-11271-RWZ |

## DEFENDANTS JOHN RUGER AND  RUGER ASSOCIATES, INC.'S MOTION TO TRANSFER

Defendants John Ruger and Ruger Associates, Inc., by its attorneys Pierce Atwood LLP, hereby move this Court, pursuant to 28 U.S.C. §1404(a), to transfer this civil action to the United States District Court for the District of Maine.  The Affidavit of John Ruger is filed contemporaneously herewith.

**I.      Statement of Facts**

John Ruger is an individual with his residence and domicile in Blue Hill, Maine, and Ruger Associates, Inc., is a corporation organized and existing under the laws of the State of Maine with a principal place of business in Blue Hill, Maine.  Ruger Associates was organized in 1986, and has been continually in existence as a corporation since that time.  Ruger Associates is in the business of construction single-family homes and small commercial buildings and has always been in that business.  The gross revenues of Ruger Associates in 2004 were $520,368; Ruger Associates' net worth is less than $100,000.  Since its incorporation in 1986, Ruger Associates has built homes only in Hancock County, Maine.  (Affidavit, ¶¶ 4, 5).  Plaintiffs Carl

{W0368338.3}

and Alicia Furman are residents of Westport, Massachusetts.  (Complaint, ¶ 1).  Plaintiffs and

Ruger Associates, Inc. entered into a "cost-plus" contract without a maximum price (the

"Contract") signed on or about March 17, 1998, under which Ruger Associates agreed to build

Plaintiffs a home in Stonington, Maine.  (Affidavit, ¶¶ 6, 8, 9).  Plaintiffs' lawsuit, which was

filed in the Bristol County, Massachusetts Superior Court and subsequently removed to this

Court, seeks damages for alleged breach of contract and alleged violations of M.G.L. Chapter

93A.  The only connection the lawsuit has to Massachusetts is Plaintiffs' residence in Westport,

Massachusetts.

John Ruger and Ruger Associates, Inc. are located in Maine, as is the house at the center

of the lawsuit.  (Affidavit, ¶¶ 5, 6).  Most, if not all, potential witnesses to the house building

process are located in Maine, including all subcontractors and suppliers who were involved with

the construction of the Plaintiffs' house in Stonington, Maine.  (Affidavit, ¶¶ 13, 14, 21-24).

Ruger Associates, Inc. employs no persons in Massachusetts or who reside in Massachusetts.

(Affidavit, ¶ 16).  The Contract was signed in Maine and consistently refers to Maine law.

(Affidavit, ¶ 17).  All in person discussions regarding the construction of the Plaintiffs' house

occurred in Maine.  (Affidavit, ¶ 20).  In addition, Plaintiffs' complaint contains no allegations of

actions taken or not taken by either party in Massachusetts; all of the work under the Contract

was completed in Maine.  (Affidavit, ¶¶ 15, 18).  Finally, Ruger Associates' construction

projects, past and present, are all located within Hancock County, Maine.  (Affidavit, ¶¶ 25, 26).

## II.    <u>The Standard for Transfer of Venue under 28. U.S.C. § 1404(a)</u>

"Under § 1404(a), a district court may transfer any civil action to any other district where

it may have been brought '[f]or the convenience of parties and witnesses, in the interest of

justice.'"  <u>Coady v. Ashcraft & Gerel</u>, 223 F.3d 1, 11 (1st Cir. 2000) (quoting 28 U.S.C. §

1404(a)).  Title 28 U.S.C. § 1404(a) is intended to "place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  West Marine Products, Inc. v. Dolphinite, Inc., Case No. Civ.A. 04-10251-PBS, 2005 WL 1000259, at *10 (D. Mass. March 23, 2005) (citing Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988), quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).  Changing venue pursuant to 28 U.S.C. § 1404(a) is similar to the common law doctrine of *forum non conveniens*, but permits transfer upon a lesser showing of inconvenience than would be required pursuant to that doctrine.[1]  See Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955).  Accordingly, if a case can be tried more conveniently and efficiently in a forum other than where it was originally brought, a change of venue, for purposes of serving the interests of justice, should be effectuated.  Factors to be considered by the district court in making its determination include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).  See also Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987) ("Factors to be considered by the district court in making its determination include the convenience of the parties and witnesses . . . the availability of documents, and the possibilities of consolidation.");  Workgroup Technology Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 116 (D. Mass. 2003) (explaining that the "convenience to witnesses is probably the most important factor").

---

[1] Additionally, unlike a *forum non conveniens* motion that dismisses the case, a change of venue motion simply transfers the case to another district court.

Since "transfer [under § 1404(a)] must be to a jurisdiction where the action could have been brought in the first place," <u>Reyes v. Supervisor of Drug Enforcement Administration</u>, 834 F.2d 1093, 1095 (1st Cir. 1987), the first step in addressing a motion to transfer under § 1404(a) is to determine whether (1) the United States District Court for the District of Maine has subject matter jurisdiction over this case, (2) venue is proper in the District of Maine, and (3) there is personal jurisdiction over Ruger and Ruger Associates. Clearly, the Furmans could have brought this action in Maine. Upon removal, jurisdiction in both Massachusetts and Maine is based on diversity. <u>See</u> 28 U.S.C. § 1332. In addition, under 28 U.S.C. §§ 1391(a) and 1391(c), venue is proper in Maine. Finally, as residents of Maine, both Defendants are subject to service of process in Maine.

The second step in addressing a motion to transfer under § 1404(a) is to determine whether transferring the action would promote the convenience of the parties, the convenience of the witnesses, and the interests of justice, with convenience to witnesses being "probably the most important factor." <u>Princess House, Inc. v. Lindsey</u>, 136 F.R.D. 16, 18 (D. Mass. 1991).

**III.    Numerous Factors Support Transfer of this Case to Maine**

     **1.    Convenience of Witnesses – the Most Important Factor in Deciding whether to Transfer an Action – Dictates that this Case be Transferred to Maine**

This Court has held that the most important factor in deciding whether to transfer an action pursuant to 28 U.S.C. § 1404(a) is the convenience of the witnesses. <u>See Princess House, Inc.</u>, 136 F.R.D. at 18. The convenience of the witnesses is so important to this analysis that, when the majority of the material witnesses to the case are located in the district where transfer is sought, change of venue is appropriate even when it, in turn, causes some inconvenience by requiring plaintiffs to litigate outside their home forum. <u>See Dicken v. United States</u>, 829 F.

Supp. 91, 93 (D. Md. 1994). Here, the convenience of the witnesses overwhelmingly favors

transferring the claims against Ruger and Ruger Associates to the District of Maine.

The Complaint in this matter alleges fraudulent and otherwise improper billing for work

performed. (Complaint, ¶¶ 45-47). To adequately defend against these allegations, Defendants

will be required to present several key non-party witnesses to testify regarding billing practices.

These non-party witnesses work and/or reside in or around the Blue Hill, Maine region in

Hancock County. None of the fact witnesses that Ruger or Ruger Associates would likely call at

trial reside in Massachusetts. The specific key Maine witnesses – twenty-seven subcontractors

and nine suppliers – for purposes of these proceedings are included in the Affidavit of John

Ruger. (Affidavit, ¶¶ 22, 24).

Clearly, it would be far more convenient for these witnesses to have this case transferred

from Massachusetts to Maine. Substantial travel and expense in terms of cost and time away

from work would be avoided. In Maine, these witnesses could be readily available to testify, at

little or no cost. In contrast, the Plaintiffs are the only Massachusetts residents who have specific

information related to the allegations in the Complaint. As Plaintiffs have a now-completed

home in Stonington, Maine, they should have no trouble coming to Maine to address their

problems with Defendants' actions. (Complaint, ¶ 66). Moreover, Plaintiffs' testimony will

necessarily entail their knowledge and understanding of Defendants' operations and the alleged

problems associated with the construction of their Stonington, Maine home.

> **2.      This Case Should be Transferred to Maine to Procure the Availability
>       of Non-Party Witnesses to these Proceedings**

Another factor militating heavily in favor of transferring this case from Massachusetts to Maine is the availability of compulsory process to ensure the attendance of the key non-party witnesses to this case.  See <u>Gulf Oil Corp.</u>, 330 U.S. at 511.

Pursuant to Fed. R. Civ. P. 45(b)(2):

> [A] subpoena may be served at any place within the district of the court by which it is issued, or at any place [outside] the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena or at any place within the [S]tate where a [S]tate statute or rule of court permits service of a subpoena issued by a [S]tate court of general jurisdiction sitting in the place of the deposition, hearing, trial, production, or inspection specified in the subpoena.

Should this case remain in Massachusetts, neither Plaintiffs nor Defendants could compel the attendance at trial of the vast number of Maine non-party witnesses who have key personal knowledge about the construction of Plaintiffs' house and Ruger Associates' defenses.  As such, if this case remains in Massachusetts, the jury would likely be denied live testimony from numerous Maine non-party witnesses, including those listed in Paragraphs 22 and 24 of John Ruger's Affidavit in support of this Motion.  Jurors would be presented pages of deposition testimony for witness-after-witness.  While such alternative might be acceptable where only one or two ancillary non-party witnesses are involved, it would not be acceptable to the case at hand, which entails a significant number of non-party witnesses who carry critical knowledge regarding billing practices and other central facts in this case.  However, should this case be transferred to Maine, the non-party witnesses located in and around Hancock County, Maine, would be available, through compulsory process, or otherwise, to give live testimony at trial. <u>See</u> <u>id</u>.

In sum, transfer of this case to Maine would effectuate much-preferred live testimony from all of the critical non-party and party witnesses to these proceedings.  See Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 4-5 (D. Mass. 1987); see also Gulf Oil Corp., 330 U.S. at 511 ("to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create an unsatisfactory condition to court, jury, or most litigants").

     **3.**     **This Case Should be Transferred from Massachusetts to Maine because Most of the Pertinent Documents are Located in Maine and Transfer would Afford the Finder of Fact a Necessary View of Plaintiffs' House**

The circumstances at issue in this case support change of venue because most of the pertinent documents are located in Maine.  See Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987);  Codex v. Milgo Electric Corp., 553 F.2d 735, 737 (1st Cir.), cert. denied, 434 U.S. 860 (1977) (finding that location of documents in proposed transferee district weighs in favor of transfer).  Such documents include plans, drawings, designs, calculation sheets and other write-ups by both the parties to this action, as well as the non-party contractors/subcontractors with key involvement to the issues that will be addressed in these proceedings.  Those documents are subject to the subpoena power of the United States District Court for the District of Maine, but not this Court.  Moreover, discovery disputes with non-parties to this action would most likely be resolved in Maine federal court anyway.

Another factor supporting change of venue is the "possibility of view of premises, if view would be appropriate to the action." Gulf Oil Corp., 330 U.S. at 508.  Principally, change of venue is favored when transfer of a case would lead to a jury inspection and view of a core issue of the case, and such object cannot possibly be moved.  See Dicken v. United States, 862 F.

Supp. 91, 94 (D. Md. 1994) (transfer favored when core issue of case involved a staircase, and jury view was preferred over photographs).  Such is the case here.  In addition, a jury inspection and view in this case would be appropriate because of the complexity of the Furmans' house, which included, among other intricate details, approximately 60 different angled profiles for trim.  (Affidavit, ¶ 19).

    **4.**       **Maine Has the Most Significant Relationship and Contacts to this Litigation, and a Maine Court would be Best Suited to Decide this Case under Maine Law**

"It has long been recognized that there is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the [S]tate law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."  Van Dusen, 376 U.S. at 644 (citing Gulf Oil Corp., 330 U.S. at 509); See also, Wellons v. Numerica Savings Bank, FSB, 749 F. Supp. 336, 337 (D. Mass. 1990) (action against New Hampshire bank transferred from Massachusetts to New Hampshire based, in part, on fact that New Hampshire law governed case).  Change of venue is, therefore, favored if the choice of law is that of the State to where transfer is requested.  See Gulf Oil Corp., 330 U.S. at 509; Martin-Trigona v. Meister, 668 F. Supp. 1, 3 (D.D.C. 1987).

Massachusetts has adopted the "significant relationship" test, as enunciated by the Restatement (2d), Conflict of Laws.  See Nile v. Nile, 432 Mass. 390, 401 (1990).  As such, for contract actions, it is the law of the State that has the most significant relationship with the contract at issue that is to be applied.  Id.

In this case, Maine, not Massachusetts, bears the most significant relationship to these proceedings.  Importantly, Plaintiffs' breach of contract claim revolves entirely around the house that Ruger Associates built for Plaintiffs in Stonington, Maine.  Everything related to the

construction of Plaintiffs' house occurred in Maine.  (Affidavit, ¶¶ 6, 8, 13, 14, 18-24).  Plaintiffs

traveled to Maine to review the progress on the house and meet with Mr. Ruger, not the other

way around, i.e., Mr. Ruger did not go to Massachusetts to discuss the house with Plaintiffs.

(Affidavit, ¶¶ 19, 20).

In contrast, Massachusetts's relationship to this case is that Plaintiffs claim to be

Massachusetts residents and claim to have received promotional correspondence from Mr. Ruger

at their Massachusetts address.  Yet, sales activity, without more, does not create a strong

connection to a given forum.  See Acterna v. Adtech, Inc., 129 F. Supp. 2d 936, 938 (E.D. Va.

2001) ("federal courts are not solicitous of plaintiffs claiming 'substantial weight' for their forum

choice where the connection with the forum is limited to sales activity without more.").

Therefore, because of Massachusetts's tangential relationship to the material facts at issue in this

case, Plaintiffs' choice of forum should be accorded less deference in this Court's change of

venue analysis. See Brant Point, 671 F. Supp. at 5; see also Goodman v. Schmalz, 80 F.R.D. 296,

302 (E.D.N.Y. 1978) ("Where [as here] the operative facts of the case have no material

connection with this district, plaintiff's choice of forum carries less weight.").

Because Maine has a more substantial connection with this dispute than Massachusetts

(or any other forum), the substantive laws of Maine should govern this case.  It is more

appropriate that a federal court sitting in Maine interprets and applies Maine law to the facts of

this Maine-based case.

**5.      Transferring this action to the District of Maine will serve the
interests of justice.**

The final factor that courts consider in determining whether to transfer an action under

Section 1404(a) is the interest of justice.  Here, the interest of justice is best served by

transferring the claims against Ruger and Ruger Associates to the District of Maine.  The District

Court for the District of Maine is not overburdened; its local rules provide for many cases to be

resolved in less than twelve months after filing.  Moreover, Maine has a stronger interest in the

adjudication of Plaintiffs' claims because all of the actions and decisions relating to the building

of Plaintiffs' home in Stonington, Maine occurred in Maine.  Additionally, as discussed, there is

no substantial connection between the claims against Ruger and Ruger Associates and the

District of Massachusetts.  Finally, Ruger Associates, Inc. is a small company with a net worth of

less than $100,000.  (Affidavit, ¶ 4).  Forcing Ruger Associates, Inc. to try this case in Boston

would severely and unnecessarily deplete its resources.  Therefore, the interests of justice would

best be served by transferring this case to the District of Maine.

IV.    **Conclusion**

For the foregoing reasons, the Court should grant Defendants' motion to change venue

and transfer this case from the United States District Court for the District of Massachusetts to

the United States District Court for the District of Maine.


July 11, 2005

/s/ Nikolas P. Kerest
Nikolas P. Kerest, BBO# 647462
Attorney for Defendants John Ruger and
Ruger Associates, Inc.


PIERCE ATWOOD LLP
One Monument Square
Portland, ME  04101
207-791-1100

**REQUEST FOR ORAL ARGUMENT**

Counsel for Defendants believes that oral argument may assist the Court in resolving this Motion and therefore requests oral argument.

**RULE 7.1(A)(2) CERTIFICATION**

Counsel for Defendants conferred with counsel for Plaintiffs and have attempted in good faith to resolve or narrow the issue described in this Motion. Counsel for Defendants sent letters via facsimile in an effort to confer on July 8, 2005 and July 11, 2005. Counsel for Defendants also left a phone message for Plaintiffs' counsel on July 8, 2005 requesting a phone conference on the transfer issue. Counsel for the parties spoke on the telephone on July 11, 2005, and although good faith efforts were made to narrow the transfer issue, counsel agreed that the transfer issue does not leave much room for compromise.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

## CERTIFICATE OF SERVICE

    I hereby certify that on July 11, 2005 I filed electronically named Defendants' Motion to Transfer and Affidavit of John Ruger with the Clerk of Court using the CM/ECF system and sent a paper copy via overnight mail to Andrew C. Novick, attorney for Plaintiffs.

/s/ Nikolas P. Kerest
Nikolas P. Kerest
Attorney for John Ruger and
Ruger Associates, Inc.

PIERCE ATWOOD LLP
One Monument Square
Portland, ME  04101
(207) 791-1100

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARL and ALICIA FURMAN,<br><br>     Plaintiffs,<br><br>v.<br><br><br>JOHN RUGER and<br>RUGER ASSOCIATES, INC.,<br><br>     Defendants. | Docket No. 05-CV-11271-RWZ |

## **AFFIDAVIT OF  JOHN RUGER**

Pursuant to 28 U.S.C. § 1746, John Ruger declares and states as follows:

1. My name is John Ruger.

2. I am president of Ruger Associates, Inc.  I own 100% of the stock of Ruger Associates, Inc. ("Ruger Associates").

3. I have personal knowledge of, and am competent to testify to, the matters contained in this Affidavit.

4. Ruger Associates, Inc. is a corporation organized and existing under the laws of the State of Maine with a principal place of business in Blue Hill, Maine.  Ruger Associates was organized in 1986, and has been continually in existence as a corporation since that time. Ruger Associates is in the business of construction single-family homes and small commercial buildings and has always been in that business.  The gross revenues of Ruger Associates in 2004 were $520,368;  Ruger Associates' net worth is less than $100,000.

5. Since its incorporation in 1986, Ruger Associates has built homes only in Hancock County, Maine.  The corporation's offices are in Blue Hill, Maine.  To the best of my

recollection, the vast majority of the work of Ruger Associates over the years has been within 35 miles of our office in Blue Hill.  I am enclosing a copy of a map, <u>see</u> Exhibit 1, showing the location of Blue Hill, which is approximately 240 miles from Boston.

6.  Ruger Associates, Inc. and Plaintiffs entered into a "cost-plus" contract without a maximum price (the "Contract"), attached as Exhibit 2, signed March 17, 1998 under which Ruger Associates, Inc. contracted to build a house for Plaintiffs in Stonington, Maine.  According to the Stonington Chamber of Commerce, Stonington is a town with a year round population of approximately 1,152, and a summer population of approximately 2,750.  Stonington is located on Deer Isle, an island in Penobscot Bay, off the coast of Maine.

7.  It was my normal practice to review land sale transactions in the Hancock County Registry of Deeds from time to time, to see if any parcels had been purchased by out of state residents.  I did this because it has been proved to be a good way to locate potential customers for my business.  Attached as Exhibit 3 is a letter I apparently sent to Mr. Furman in September 1996.  I have no memory of sending this letter, but it was attached to the complaint in this action, and I assume that a registry search is how I came up with Mr. Furman's name.

8.  In any event, after September 1996, the Furmans called me to inquire about my services. We met at my office in Blue Hill.  At this initial meeting, the Furmans had a rough sketch of the house that they wished to build.  Approximately one year after our initial meeting the Furmans contacted me again.  At this time, they had hired an architect, James Schildroth  of Wiscasset, Maine, and had already or were in the process of firing their contractor for the house.  We signed the construction contract on the site in Stonington on

March 17, 1998.  Mr. Schildroth, the architect, resigned July 28, 1998.  I never went to visit the Furmans in Massachusetts, before or after the contract was signed.

9.   The parties to the Contract are Carl Furman, Alicia Furman, and Ruger Associates, Inc.

10.   Plaintiffs filed suit against Ruger Associates, Inc. and John Ruger, individually, on or about October 18, 2004, alleging breach of contract and violations of M.G.L Chapter 93A.  Service was not made on Ruger Associates or on me personally until May 31, 2005.

11.   Construction under the contract started on approximately July 1998, with clearing of the land.  Construction continued until approximately October 2000, when Ruger Associates was asked to leave the job and was not paid its final billings.

12.   The disputes, as articulated in the complaint, concern allegedly fraudulent or otherwise improper billing for work performed.  The Complaint does not claim any defective workmanship.

13.   To the extent that the evidence in this matter concerns the appropriateness of billings, the evidence will be a combination of testimony from numerous suppliers, subcontractors and Ruger Associates employees, including myself.  There is no way I can expect my subcontractors and suppliers, all of which are located in or near Hancock County, to travel to Boston voluntarily to testify in this matter.  I am informed that they are outside the subpoena power of the federal court in Boston.  On the other hand, they are all within the subpoena power of the federal court in Bangor, and would be able to give live testimony there.

14. Without more information as to the details of the Plaintiffs' claims, it is hard to be more specific as to the testimony of witnesses, but I can say that I know of no witnesses (other than Plaintiffs) who may testify in this matter who reside in Massachusetts.

15. Ruger Associates, Inc. has never performed any work in  Massachusetts.

16. Ruger Associates, Inc. employs no persons who reside in Massachusetts, and did not at the time of performance of this contract..

17. The Contract does not reference Massachusetts law, but does reference Maine law several times.

18. All of the work performed under the Contract was performed in Maine.

19. The Furmans were present on the job site numerous times and made many changes to the plans of the house.  By any measure, the Furmans' house plans were complex, including such details as approximately 60 different angled profiles for trim.

20. All in person discussions regarding the construction of the Plaintiffs' house occurred in Maine.

21. All of the subcontractors involved with the construction of Plaintiffs' house in Stonington, Maine are located in Maine.

22. Representatives of the following subcontractors, who participated in the construction of the Plaintiffs' home in Stonington, Maine, may testify in the litigation regarding the construction of the Plaintiffs' house.

| **Major Subcontractors** | **Description** |
| --- | --- |
| Airotherm, Inc., 188 Wiswell Road, Brewer, ME 04412 | Installed all air-conditioning equipment |
| Willard S. Stinson Electrical Services, RR 1, Box 2803, Stonington, ME 04681 | Performed all electrical work |
| Solartechnic Contractors, Inc., 234 West | Installed all heating systems including |

| Corinth Rd., Corinth, ME 04427-7948 | furnace and radiant heat infrastructure |
| Seal It Insulation Systems, 18 Pippa Road, Harpswell, ME 04079 | Insulated the entire house |
| Percy L. Brown & Son, Inc., Box 653, Deer Isle, ME 04627 | Performed all plumbing work on the house |
| Freshwater Stone and Brickwork, Inc., P.O. Box 15, U.S. Route 1, Orland, ME 04472 | Completed all masonry work including outdoor steps, fireplace, interior floors, and walkway to the water |
| Ed Davis Construction, RFD 1 Box 1510, Stonington, ME 04681 | Performed all excavation including digging foundation |
| Clewley Foundations, Inc., 1932 Union Street, Bangor, ME 04401 | Poured foundation |
| Billings Forest Products, Inc., 189 Twin Hill Road, Ellsworth, ME 04605 | Cleared trees and other growth on building site |
| Zimba Co., P.O. Box 336, Summit Street, Fairfield, ME 04937 | Installed all sheet rock in the house |
| **Minor Subcontractors** | **Description** |
| Seacoast Security and Telephone, P.O. Box A, West Rockport, ME 04865 | Installed alarm system |
| Steven Lane, Ellsworth, ME 04605; Wilbur and Associates, P.O. Box 5582, Ellsworth, ME 04605 | Carpenter |
| Williams and Taplin, P.O. Box 173, Blue Hill, ME 04614 | Dug well for house |
| Roof Systems of Maine, P.O. Box 1134, Bangor, ME 04402 | Installed EPDM membrane under small section of deck |
| Rodney Chadbourne, Professional Land Surveyor 1125, P.O. Box 575, Deer Isle, ME 04627 | Surveyor |
| Prosource, RFD 1, Box 354 k4, Ellsworth, ME 04605 | Installed tiles in bathrooms |
| Overhead Door Co. of Bangor, Inc., 13 Liberty Drive, Bangor, ME 04401 | Installed three garage doors |
| Morse Welding, RR#1, Box 3455, Sedgewick, ME 04676 | Minor welding work |
| Michael H. Wight, 309 Gary Moore Road, Ellsworth, ME 04605 | Carpenter |
| Michael Levesque, P. O. Box 801, Mt. Desert, ME 04664 | Carpenter |
| Metal Magic, Bar Harbor Road, Trenton, ME 04605 | Minor sandblasting work |
| Great Green Barrier, 246 Randall Road, North Berwick, ME 03906 | Installed foundation coating |
| General Concrete Cutting Services, Inc., | Drilled hole for venting system |

| P.O. Box 2062, Lewiston, ME 04241-5857 | |
| --- | --- |
| Custom Surface Applications, RR 6, Box 1174, Augusta, ME 04330 | Applied stucco finish on part of foundation |
| Coastal Drilling and Blasting, Inc., RFD 3 Box 192A, Ellsworth, ME 04605 | Performed blasting for underground power line and for foundation |
| Billings Diesel and Marine Service, Inc., Box 67, Stonington, ME 04681 | Crane service |
| Arthur Miller, Trinity Way, Ellsworth, ME 04605 | Carpenter |

23. All of the suppliers of goods, except for those who shipped goods in from outside Maine, are located in Maine.

24. Representatives of the following suppliers, who participated in the construction of the Plaintiffs' home in Stonington, Maine, may testify in the litigation regarding the construction of the Plaintiffs' house.

| **Suppliers** | **Description** |
| --- | --- |
| Ellsworth Building Supplies, 261 State St., Ellsworth, ME 04605 | Largest supplier on the job; supplied more than 50% of the building materials |
| M.D. Joyce & Co., P.O. Box 330, Deer Isle, ME 04627-0330 | Local lumber and hardware supplier |
| Applicators Sales & Service, P.O. Box 10109, Portland, ME 04104 | Supplied staples and nails |
| McKay's Plumbing and Heating, Penobscot, ME 04476 | Supplied roof flanges |
| L.A. Gray Servistar Home Center, U.S. Route 1, P.O. Box 67, Hancock, ME 04640-0067 | Local lumber and hardware supplier |
| Granville Lumber Co., Bar Harbor Road, Rt. 1A, P.O. Box 1240, East Holden, ME 04429 | Local lumber and hardware supplier |
| Barter Lumber Co., P.O. Box 330, Deer Isle, ME 04627-0330 | Local lumber and hardware supplier |
| C.W. Hayden Co., Inc., P.O. Box 1030, Auburn, ME 04211-1030 | Supplied caulk |
| Bangor Steel Service, Inc., 123 Dowd Road, P.O. Box 1900, Bangor, ME 04402-1900 | Supplied steel framing for house |

25. All of Ruger Associates' past construction projects have been located in Hancock County, Maine.

26. All of Ruger Associates' present construction projects are located in Hancock County, Maine.

 

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 8, 2005

/s/ John Ruger_____
John Ruger

STATE OF MAINE                                                                                July 8, 2005
HANCOCK, ss.

Personally appeared before me the above-named John Ruger and made oath that the foregoing Affidavit by him subscribed is true and correct.  Where statements are made based on information and belief, he believes them to be true.

/s/ Brenda J. Condon_____
Notary Public, Maine
My commission expires November 21, 2009

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


**<u>CERTIFICATE OF SERVICE</u>**


   I hereby certify that on July 11, 2005 I filed electronically Defendants' Motion to Transfer and Affidavit of John Ruger with the Clerk of Court using the CM/ECF system and sent a paper copy via overnight mail to Andrew C. Novick, attorney for Plaintiffs.


        /s/ Nikolas P. Kerest
        Nikolas P. Kerest
        Attorney for John Ruger and
        Ruger Associates, Inc.


PIERCE ATWOOD LLP
One Monument Square
Portland, ME  04101
(207) 791-1100



**Google Maps**
Blue Hill, ME



Blue Hill, ME 04614

ORIGINAL

# HOME CONSTRUCTION CONTRACT

**AGREEMENT** made this 17th        day of March        , 1998    ,
between:

1.  Parties.
    Ruger Associates, Inc.
    Blue Hill, Maine 04614
    (207) 374-2154      (hereinafter "Contractor")

and

Name:    __Carl and Alicia Furman_____

Address:   __56 Quail Trail, Westport, MA. 02790_____

Telephone: (508.636.6493)        (hereinafter "Homeowner")

2.    Location of Job Site.
    The property on which the work will be done is located at:

    _____Oceanville Road_____

    _____Stonington, Maine_____

3.    Dates of Work.
    The dates set out below reflect the contractor's best estimate of beginning and completion of work to be done.  It is understood between the parties that these dates may vary substantially depending on weather, sub-contractor's schedules, changes made during the project, availability of specific materials, and other factors beyond the control of the contractor.

    Estimated beginning date of work: _March 23, 1998 (site layout) _____

    Estimated date work will be substantially completed: December, 1999

(1)

EXHIBIT
2

4.     Cost of Labor and Materials.   (to be renegotiatied on 1.1.99)
       The labor and materials necessary for this project shall be supplied on a cost plus
basis.  Labor rates shall be as follows:        $ 18 per hour / helper

       $ 23 per hour per carpenter;         $ 26  per hour / foreman;

       $ 38 per hour / cabinetmaker;        $ 38  per hour / J. Ruger.

       Materials shall be supplied for cost plus _12__percent,
invoices to be provided to the owner.

       Subcontractors shall be supplied for cost plus ___12__ percent,
invoices to be provided to the owner.

       An estimate of the cost of labor and materials for the contracted project will be
attached hereto as Exhibit A, including a general description of the work to be provided
and the materials to be used or expressly excluded, by phase, when completed. It is noted
that these estimates will be broken down by labor and material whenever possible. It is
expressly understood that Contractor is not responsible for any cost overruns for services
provided by subcontractors.


5.     Change Orders.
       Any alternation or deviation from the above contractual specifications involving
extra cost, in time and/or materials, shall be entered into by the execution of a written
change order, detailing the changes to be made and the estimated change in price, and
signed by both parties.  Upon execution, said change order shall become a part of, and be
performed in conformance with, this contract.  A sample change order is attached to this
contract.


6.     Payment.
       The terms of payment are a follows:

       $ 10,000 shall be paid prior to the commencement of work.

       Contractor shall bill Homeowner every four weeks for labor provided, materials
used and subcontractors charges to date.  Payment shall be made within (10) days of
billing.  Homeowner shall be credited for initial payment on last bill.

(2)

7.    Warranty.
      In addition to any additional warranties agreed to by the parties, the contractor
warrants that the work will be free from faulty materials, constructed according to the
standards of the building code applicable for this location, constructed in a skillful manner
and fit for habitation.  The warranty rights and remedies set forth in the Maine Uniform
Commercial Code apply to this contract. This warranty includes coverage for one year from
date of substantial completion.

8.    Resolution of Disputes.
      If a dispute arises concerning the provisions of this contract or the performance by
the parties, then the parties agree to settle this dispute by jointly paying for one of the
following:
      (initial only one):

      (1)  Binding arbitration as regulated by the Maine Uniform Arbitration Act, with the
           parties agreeing to accept as final the arbitrator's decision;
           (                )

      (2)  Nonbinding arbitration, with the parties free not to accept the arbitrator's
           decision and to seek satisfaction through other means, including a lawsuit;  or
           (                )

      (3)  Mediation, with parties agreeing to enter into good faith negotiations through
           a neutral mediator in order to attempt to resolve their differences.
           ( RAI             )

9.    Residential Insulation.
      If the construction includes installation of insulation in an existing residence, any
disclosures required by Maine law are set out in the attached Insulation Disclosure Form.


Dated at Blue Hill, Maine, _____March 23, _____, 1998__.


           _____
                        Contractor

           _____
                        Homeowner

           _____
                        Homeowner

(3)

<u>EXEMPTION</u>

     The Contract set forth above conforms to the requirements of Title 10, Maine Revised Statutes Annotated, Chapter 219-A. This statute provides that every party to a home construction contract has a <u>right</u> to have a contract in writing signed by the contractor and the homeowner, with a copy of the signed contract being received by both parties prior to any work being performed. The basic contract must contain the entire agreement and must contain all the parts set forth above. The contractor specifically acknowledges the <u>right</u> of the homeowner to have the contract completed in its entirety and acknowledges his willingness to conform to the statutory requirements. The homeowner acknowledges that he/she has been advised of his/her right to such a contract under the Statutes of Maine, has read the entire contract, and is aware of the information and agreements it contains. The parties hereto may exempt themselves from the requirements of this Chapter of the Maine Revised Statutes Annotated and mutually agree to a contract (or change order) that does not contain the parts set forth above on the first three pages of this Agreement.

     WE DO HEREBY MUTUALLY AGREE TO EXEMPT OURSELVES FROM THE REQUIREMENTS OF SAID CHAPTER 219-A.

Date: _3-17-98_     _____

                          Contractor

                          Homeowner

                          Homeowner

EXHIBIT A



# JOHN RUGER

## ASSOCIATES

P.O. BOX 273 BLUE HILL, ME



·CUSTOM BUILDERS·

04614    TEL. 207-374-2154

September 3, 1996

Mr. Carl M. Furman
56 Quail Trail
Westport  MA  02790

Dear  Mr. Furman:

This letter is being sent to acquaint you with my construction business.  I am a general contractor, specializing in custom house construction with eighteen years experience in the area.  Workmanship is in the Maine tradition...carefully performed in a conscientious and timely manner with all work fully insured.  I work well with local architects and also enjoy building houses designed by my clients.

A range of styles from traditional post and beam, through shingle style, to post modern contemporary houses have been built in Blue Hill, Castine, Sedgwick, Brooklin, Brooksville, Surry, Deer Isle, Salisbury Cove, and Somesville.  In the past few years I have completed a fabulous post-modern house overlooking Bucks Harbor in Brooksville, a contemporary waterfront home on Blue Hill Bay in Brooklin, and a turn-of-the-century cottage style home on Blue Hill Bay in Blue Hill.  Currently, I have under construction a fascinating, large family estate designed by Knight Associates of Blue Hill on Eggemoggin Reach in Sedgwick.  It features interesting details including round walls, curved ceilings and a beautiful eyebrow window.  I have recently completed a more understated waterfront home in Blue Hill, featuring an indoor pool.  Many of these homes are available for inspection by appointment.

If you are looking for fine finish cabinetry, I design and build custom kitchen cabinets, bookcases, staircases, mantles, window seats, and fine furniture.  I can design and produce any custom moldings or millwork.  The woodworking shop is fully equipped with state of the art machinery and staffed full time.  Both the shop and offices are located a short distance from the village of Blue Hill.

Although you may not be considering a building project right now, you are welcome to telephone me with your questions.  If you are planning construction, I would appreciate the opportunity to meet with you for a free consultation at your site.

Sincerely yours,

John Ruger

EXHIBIT
3
PENGAD-Bayonne, N.J.

Dicatina Over