UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-11271-RZW   RWZ

| | |
|---|---|
| Carl and Alicia Furman,<br>    PLAINTIFFS | )<br>)<br>) |
| VS. | )<br>) |
| John Ruger and<br>Ruger Associates, Inc.,<br>    DEFENDANTS | )<br>)<br>) |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF MAINE

Now come the Plaintiffs, and by their attorney, respectfully oppose the Defendants' Motion to Transfer Venue from the District Court of Massachusetts to the District Court of Maine for the following reasons:

1) **This case was properly brought in Massachusetts** as the Defendant, John Ruger, *directly solicited business* by mailing a letter to the Plaintiffs at their residence *in Massachusetts*. See EXHIBIT A, attached..

2) **A transfer of this case to Maine would *not* increase the convenience to the parties and witnesses.** It would be inconvenient to either party and their respective witnesses to have the case in the state in which they do not reside. Both parties vacation in the state of the other parties' residence. Although each of the parties has *potential* witnesses from their home state, in that each party used laborers and vendors from their home state, it is extremely unlikely that the majority of these laborers and vendors would actually be called upon to testify at trial or deposition. The

Defendants imply that *more* witnesses would be inconvenienced by a trial in Massachusetts, but this is not likely to be the case, because (a) the Plaintiffs also used many laborers (potential witnesses) from Massachusetts, and (b), there is a considerable difference between those potential witnesses having *any* knowledge of the subject of this action, and those whose testimony actually would be sought by either party.

**3) A transfer from Massachusetts to Maine would not be in the interest of justice.** The Plaintiffs allege that they were directly solicited in Massachusetts, and that they were thereafter defrauded by the contractor from Maine, who had also asked them to agree that he was *exempted from the Maine Statute* governing home construction. They allege that when they questioned his gross overbilling in October of 2000, on a still incomplete project that was supposed to have been completed by December 1999, that the contractor abandoned the job. The Plaintiffs finally entered suit under the Massachusetts Consumer Fraud Act against the contractor who had exempted himself from Maine Law.  See EXHIBIT B attached.

**4) Neither the location of the subject property, nor the location of documents justify a transfer of venue.**   It is true that the subject property is located in Maine. But that in itself does not provide a basis for transfer. It is unlikely that a jury view would be necessary or probative, as the property is no longer in the disputed condition. The Defendants abandoned the project before completing construction, and the Plaintiffs completed the construction. The idea that the Defendants would seek transfer in order to show the jury the Plaintiffs' finish work lacks credence. As to the present location of documents likely to be introduced at trial: the Defendants have some of them in Maine, and the Plaintiffs have some of them in Massachusetts. In the course of discovery, the parties

will exchange them.

## SUMMARY

The Defendants have brought this Motion to Transfer based upon 28 U.S.C. s.1404, which allows transfer, "for the convenience of parties and witnesses, in the interest of justice." The Defendants' true motive in moving this action from Massachusetts, to Maine is to shift the inconvenience to the Plaintiffs. The inconvenience to the Defendants should have no bearing on where this action is tried, because *but for* the Defendants' direct solicitation of the Plaintiffs in Massachusetts, the parties would not have transacted any business together. And but for the Defendants unfair and deceptive overbilling, and abandonment of the project immediately upon being asked for an explanation of the billing, this case would not be in suit. Furthermore, while the Plaintiffs have specifically alleged violations of Massachusetts law, with which the Massachusetts court is likely to have greater familiarity, the Defendants in their initial contract, have specifically disavowed the application of the applicable Maine law.

Furthermore, as to the balancing of convenience to those witnesses who are likely to *actually* be sought by either party to appear at trial or deposition, that neither the Defendants' laborers and vendors from Maine, nor the Plaitniffs' vendors and laborers from Massachusetts, are likely to actually be called to testify. Rather than this being a case in which each carpenter is asked to testify about what he did each day (as the Defendants have implied will be necessary), or each vendor is asked to testify as to how much he charged for materials, this is really a case about either mismanagement of that labor force and materials cost, or, intentionally fraudulent overbilling. Such

a case will entail primarily the testimony of only the principals and their experts.

## REQUEST FOR ORAL ARGUMENT

Counsel for the Plaintiffs believe that oral argument may assist the Court in resolving this Motion, and therefore request oral argument.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading has been served by mailing postage paid by first class mail to the Defendants' counsel of record, this 21st day of July, 2005.

Respectfully submitted,
Carl Furman and Alicia Furman,
By their attorney,

_____
ANDREW C. NOVICK, ESQ.
NOVICK LAW OFFICES INC.
227 Union Street
New Bedford, MA 02740
Tel. No. (508) 997-4571
B.B.O. No. 543825

EXHIBIT A


# JOHN RUGER

P.O. BOX 273 BLUE HILL, ME




# ASSOCIATES

04614   TEL. 207-374-2154

CUSTOM BUILDERS

September 3, 1996

Mr. Carl M. Furman
56 Quail Trail
Westport MA 02790

Dear Mr. Furman:

    This letter is being sent to acquaint you with my construction business. I am a general contractor, specializing in custom house construction with eighteen years experience in the area. Workmanship is in the Maine tradition...carefully performed in a conscientious and timely manner with all work fully insured. I work well with local architects and also enjoy building houses designed by my clients.

    A range of styles from traditional post and beam, through shingle style, to post modern contemporary houses have been built in Blue Hill, Castine, Sedgwick, Brooklin, Brooksville, Surry, Deer Isle, Salisbury Cove, and Somesville. In the past few years I have completed a fabulous post-modern house overlooking Bucks Harbor in Brooksville, a contemporary waterfront home on Blue Hill Bay in Brooklin, and a turn-of-the-century cottage style home on Blue Hill Bay in Blue Hill. Currently, I have under construction a fascinating, large family estate designed by Knight Associates of Blue Hill on Eggemoggin Reach in Sedgwick. It features interesting details including round walls, curved ceilings and a beautiful eyebrow window. I have recently completed a more understated waterfront home in Blue Hill, featuring an indoor pool. Many of these homes are available for inspection by appointment.

    If you are looking for fine finish cabinetry, I design and build custom kitchen cabinets, bookcases, staircases, mantles, window seats, and fine furniture. I can design and produce any custom moldings or millwork. The woodworking shop is fully equipped with state of the art machinery and staffed full time. Both the shop and offices are located a short distance from the village of Blue Hill.

    Although you may not be considering a building project right now, you are welcome to telephone me with your questions. If you are planning construction, I would appreciate the opportunity to meet with you for a free consultation at your site.

Sincerely yours,

John Ruger

EXHIBIT B

(3)

## EXEMPTION

The Contract set forth above conforms to the requirements of Title 10, Maine Revised Statutes Annotated, Chapter 219-A. This statute provides that every party to a home construction contract has a <u>right</u> to have a contract in writing signed by the contractor and the homeowner, with a copy of the signed contract being received by both parties prior to any work being performed. The basic contract must contain the entire agreement and must contain all the parts set forth above. The contractor specifically acknowledges the <u>right</u> of the homeowner to have the contract completed in its entirety and acknowledges his willingness to conform to the statutory requirements. The homeowner acknowledges that he/she has been advised of his/her right to such a contract under the Statutes of Maine, has read the entire contract, and is aware of the information and agreements it contains. The parties hereto may exempt themselves from the requirements of this Chapter of the Maine Revised Statutes Annotated and mutually agree to a contract (or change order) that does not contain the parts set forth above on the first three pages of this Agreement.

WE DO HEREBY MUTUALLY AGREE TO EXEMPT OURSELVES FROM THE REQUIREMENTS OF SAID CHAPTER 219-A.

Date: 3-17-98

_____
Contractor

_____
Homeowner

_____
Homeowner

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-11271-RZW

**Carl and Alicia Furman,**  )
    **PLAINTIFFS**  )
      )
VS.  )
      )
**John Ruger and**  )
**Ruger Associates, Inc.,**  )
    **DEFENDANTS**  )

## AFFIDAVIT OF CARL FURMAN

1. I am Carl Furman. My wife is Alicia Furman.

2. Both my wife and I have resided in Massachusetts all of our lives.

3. Since 1989, our home has been at 56 Quail Trail, Westport, Massachusetts.

4. In the mid-90's we purchased a piece of vacant, unimproved land in Stonington, Maine.

5. On September 3, 1996, John Ruger sent a letter to me at my home at 56 Quail Trail, Westport, Massachusetts, 02790, soliciting my business. A true copy of the letter is attached to the Complaint, and to this Affidavit, marked, "EXHIBIT A."

6. Except for the receipt of this letter, sent to my home in Westport, Massachusetts, I had never heard of John Ruger, or Ruger Associates.

7. The letter from John Ruger is written entirely in the first person, and makes no reference to any corporation.

8. As a result of receiving this letter at my home in Westport, Massachusetts, I called John Ruger, from Massachusetts.

9. On or about March 17, 1998, my wife and I signed a contract, which was also signed by John Ruger.

10. As part of the contract, John Ruger asked us to agree to exempt ourselves from Maine Revised Statues Annotated, Chapter 219-A, regarding home construction contracts, and, on or about March 17, 1998, we also signed this additional page of the contract agreeing to exempt him, and ourselves from the requirements of this Maine law.

11. Although John Ruger agreed to complete construction by December, 1999, as of October 19, 2000, construction was far from complete.

12. Also as of October, 19, 2000, even though construction was far from complete, we had been billed more than $80,000 over the _total_ cost estimated by John Ruger, and this billing included over $40,000 owed to sub-contractors that Ruger left unpaid, and that I paid after he abandoned the job.

13. On October 19, 2000, our attorney sent John Ruger a letter asking for an explanation of the billing to date, and in response John Ruger, and Ruger Associates Inc. abandoned the job.

14. Thereafter, I took over as the general contractor, and brought in carpenters and other laborers from Massachusetts, and completed construction of the home.

15. I see no legitimate reason why it would be necessary for a jury to view the premises at this point, as the house has now been completed by me, and it now looks nothing like it did at the time that John Ruger, and Ruger Associates Inc. Furthermore the defective work done by John Ruger and Ruger Associates Inc. has now been corrected by me.

16. As to the question of convenience to witnesses, although John Ruger's Affidavit lists the names of numerous people who live in Maine, I believe that it is highly unlikely that most of them would be asked to testify at trial.

17. I too employed many people from Massachusetts, to complete the house after John Ruger abandoned the job, and although I could provide a long list of people from Massachusetts who are potential witnesses, it is equally unlikely that most of them would be asked to testify at trial.

18. As to the question of inconvenience to John Ruger himself, throughout the course of our working together, he told me regularly of his weekend trips to Boston. On one occasion, knowing that he would be in Boston for the weekend, I had one of my workers deliver

materials to him in Boston.

Signed under penalty of perjury this 20<u>Th</u> day of July, 2005.

*(signature)*

Carl Furman


### The Commonwealth of Massachusetts

Bristol County

On this 20<u>th</u> day of July, 2005, before me, the undersigned notary public, personally appeared Carl Furman, personally known to me to be the person whose name is signed on the attached document, and swore to me that the statements contained therein are true to the best of his knowledge and belief.

Notary Public: *(signature)* Jason T. Prosti

My commission expires: 1-21-2011